# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**TERESA MINES,**
**Claimant Below, Petitioner**

**FILED**

December 7, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0807** (BOR Appeal No. 2051140)
                          (Claim No. 2013018960)

**ABB PROCESS ANALYTICS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Teresa Mines, by Patrick K. Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. ABB Process Analytics, Inc., by James W. Heslep, its attorney, filed a timely response.

The issue on appeal is whether a total left knee replacement should be authorized. The claims administrator denied the request for surgery on March 26, 2015. The Office of Judges affirmed the decision in its February 11, 2016, Order. The Order was affirmed by the Board of Review on August 5, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon material misstatements and mischaracterizations of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Ms. Mines, a production technician, was injured in the course of her employment on January 17, 2013, when she tripped over a cord and hit her head and knees on the concrete floor. Treatment notes from Greenbrier Valley Medical Center Emergency Room stated that Ms. Mines had no significant traumatic injuries or tenderness and had full range of motion in all joints. She was diagnosed with a concussion, a forehead contusion, and bilateral knee contusions. An x-ray of the left knee showed symmetrical changes with moderate degenerative changes. A left knee MRI taken on January 30, 2013, showed a tear of the lateral meniscus, extensive patellofemoral degenerative changes, and osteochondral injury.

1

Ms. Mines has a history of left knee problems. September 17, 2007, treatment notes by Steven Vess, D.O., indicate she underwent a patellotendon reconstruction of the left knee. It was noted that she had a tremendous amount of scar tissue in the knee. A metal wire was surgically implanted and then removed on September 25, 2008. The original injury was listed as a patella fracture. Dr. Vess's treatment note on January 25, 2010, indicates Ms. Mines was seen for right ankle and bilateral knee pain. It was noted that she had some known arthritic changes in the left knee. An x-ray of the left knee taken on April 20, 2012, showed significant degenerative change at the patellofemoral joint. A left knee MRI taken on May 20, 2012, revealed a tear of the lateral meniscus, joint effusion, advanced chondromalacia patellae, loss of cartilage at the patellofemoral joint space, and bone edema. On June 25, 2012, Ms. Mines underwent a left knee arthroscopic menisectomy and abrasion performed by Walid Azzo, M.D. Dr. Azzo noted that there was osteoarthritis along the patellofemoral joint and trochlea.

Bill Hennessey, M.D., performed a medical record review on April 20, 2013, in which he noted that he did not have all of Ms. Mines's medical records. Dr. Hennessey found from the January 2013 MRI that the left lateral femoral condyle bone edema/contusion likely occurred as a result of the compensable injury. He noted some degenerative changes in the menisci. Dr. Hennessey concluded that there was insufficient evidence that Ms. Mines tore her meniscus in the left knee on January 17, 2013. He found that she had pre-existing pathology in the knee and that her weight contributed stress on the knees creating early bilateral moderate knee osteoarthritis. The claims administrator denied authorization of a left knee arthroscopy and menisectomy on April 29, 2013.

John Pierson, M.D., an orthopedist, performed a medical record review on January 13, 2014, in which he noted that meniscus tears usually occur from twisting or turning type injuries and that landing flat on both knees would not typically cause a meniscus tear. He also stated that MRIs from 2012 and 2013 show nearly identical readings, leading him to believe that the meniscus tear noted in the 2013 MRI is the same one seen in the 2012 MRI. Further, Dr. Pierson found that Ms. Mines had significant amounts of chondral thinning and edema, indicating advanced degenerative changes of the left knee. She would be at an increased risk for a degenerative meniscus tear without a specific mechanism of injury.

On March 31, 2014, the Office of Judges reversed the claims administrator's decision and authorized a left knee arthroscopy and menisectomy. The Office of Judges found that the X-rays and MRI of the left knee taken before the compensable injury showed that Ms. Mines suffered from degenerative changes with osteoarthritis. However, the Office of Judges determined that it was more likely than not that she tore her meniscus when she fell on January 17, 2013. Ms. Mines underwent a left knee arthroscopic debridement of plica and a chondroplasty performed by Dr. Azzo on July 18, 2014. He found no meniscus tear.

In a November 19, 2014, independent medical evaluation, Prasadarao Mukkamala, M.D., noted that the left knee had some tightness, which Ms. Mines stated was present before the compensable injury. The left knee had reduced range of motion but was stable. Dr. Mukkamala assessed 4% impairment for reduced range of motion but apportioned 2% due to pre-existing

conditions. Dr. Mukkamala opined that Ms. Mines's need for a total left knee replacement was not due to the compensable injury because she had a pre-existing degenerative condition. The claims administrator denied authorization of a total left knee replacement on March 26, 2015.

Dr. Azzo completed a medical statement on April 29, 2015, indicating he believed Ms. Mines's need for a left knee total replacement was related to the compensable injury. He requested authorization for the surgery. Ms. Mines went ahead with the total left knee replacement on August 24, 2015. The pre and post-operative diagnoses were left knee osteoarthritis and previous patella fracture and tendon repair.

On October 6, 2015, Ms. Mines testified in a deposition that before her total left knee replacement, both of her knees gave out. After the surgery, the left knee no longer gave out. She stated that she fell on ice in 2003 at work and injured both knees, the left worse than the right. In July of 2007, she injured her left knee and broke her left ankle when she fell down the stairs at her house. Prior to the 2007 injury, Ms. Mines testified that she had undergone two left knee surgeries, one to reattach the patellotendon and one to remove the surgical wire. She stated that before compensable injury she had some arthritis in her left knee.

The Office of Judges affirmed the claims administrator's denial of a total left knee replacement on February 11, 2016. It found that the MRI taken on April 20, 2012, showed a tear of the meniscus as well as advanced chondromalacia of the left patella and loss of the normal cartilage at the patellofemoral joint space. In other words, Ms. Mines had significant degenerative changes prior to the compensable injury. Dr. Vess's September 17, 2002, operative report stated that her left knee had a tremendous amount of scar tissue. Dr. Azzo's June 25, 2012, operative note states that Ms. Mines had osteoarthritis along the patellofemoral joint and trochlea of the left knee. An MRI taken three days after the compensable injury in this case revealed a lateral meniscus tear and extensive degenerative changes. Though Ms. Mines underwent approved surgery for the meniscus tear, no tear was found during the procedure. The pre and post-operative diagnoses were left knee osteoarthritis and internal derangement. The Office of Judges concluded that a preponderance of the evidence indicates it is more likely than not that the significant degenerative changes to the left knee, which required a total knee replacement, were not due to the compensable injury. Ms. Mines's left knee problems began long before the compensable injury, most notably when she fractured her knee from a fall at home in 2007. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 5, 2016.

After review, we find that the Board of Review's decision is incorrect. Ms. Mines sustained a compensable left knee contusion and left knee meniscus tear in the course of her employment. Dr. Azzo, her treating physician, found that the requested surgery was medically necessary and reasonably required treatment as a result of the compensable injury. We find his opinion to be persuasive.

For the foregoing reasons, we find that the decision of the Board of Review is based upon material misstatements and mischaracterizations of the evidentiary record. Therefore, the

decision of the Board of Review is reversed and remanded with instructions to authorize the requested total left knee replacement.

Reversed and remanded.

**ISSUED: December 7, 2017**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**
Chief Justice Allen H. Loughry II
Justice Elizabeth D. Walker

LOUGHRY, Chief Justice, dissenting, joined by Justice Walker:

I dissent to the majority's decision to authorize the claimant's request for a total left knee replacement. The claimant's preexisting knee problems are well documented in the record, and it is clear that her knee replacement was necessitated by degenerative changes and not the compensable injury that occurred on January 17, 2013. As the Office of Judges noted, "the claimant's left knee problems began long before the compensable injury, most significantly the claimant's nonoccupational fall at home in 2007 when she fractured her knee and tore the patellotendon. The claimant also required a third surgery on June 25, 2012 (again prior to the compensable injury) to repair a meniscus in her left knee . . . the June 25, 2012 operative report noted that claimant had osteoarthritis." Moreover, the physician who examined the claimant at the emergency room following her compensable injury reported finding "no significant traumatic injury or tenderness, full range of motion in all joints." In addition, an x-ray of the claimant's knee taken at that time showed "symmetrical changes with moderate degenerative change in the patellofemoral and femorotibial joints bilaterally." Based on all the evidence, the Office of Judges concluded that a total left knee replacement was not reasonably required medical treatment for the compensable injury and affirmed the claim's administrator's decision denying authorization for the requested surgery. The Board of Review upheld that decision.

West Virginia Code § 23-5-15(c) (2010) provides, in pertinent part:

> If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of

4

appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record

Because it is clear that the majority has simply re-weighed the evidence to find in favor of the claimant, I respectfully dissent.

I am authorized to state that Justice Walker joins in this dissent.